UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| EWELL PETER ROBERTS #158716, | Case No. 1:08-cv-458 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Ellen S. Carmody |
| UNKNOWN HACKEN-JOE, Regular Unit Officer, UNKNOWN MIER, Regular Unit Officer, UNKNOWN NELSEN, Regular Unit Officer, UNKNOWN PLUSKAT, Regular Unit Officer, and UNKNOWN ROBERTS, Regular Unit Officer, in their personal capacities only,[1] | |
| Defendants. | |

---

**OPINION and ORDER**

**Adopting R&R over the Objections of the MDOC Defendants**

**Granting in Part the MDOC Defendants' Motion to Dismiss for Failure to State a Claim:**
Dismissing Complaint against Marsh and Hudson
Dismissing Official-Capacity Claims against Hakenjos, Miers, Nelson, Pluskhat and Roberts

**Denying in Part the MDOC Defendants' Motion to Dismiss for Failure to State a Claim:**
Allowing Personal-Capacity Claims against Hakenjos, Miers, Nelson, Pluskhat and Roberts

**Granting Defendant Sherry's Rule 12(b)(6) Motion to Dismiss Without Objection**

Ewell Peter Roberts, a prisoner at the State of Michigan's Carson City Correctional Facility

("Plaintiff"), filed this *pro se* civil-rights complaint under 42 U.S.C. § 1983 against seven employees

---

[1] Because today's opinion dismisses the complaint as to MDOC Healthcare Supervisor Leonzo Hudson, MDOC Assistant Regular Supervisor Tom Marsh, and physician's assistant Brendon Sherry, the caption no longer lists them as parties defendant. Today's opinion also dismisses the official-capacity claims against the remaining five MDOC defendants, so the caption lists only the personal-capacity claims against them.

of the Michigan Department of Corrections ("MDOC") (correctional officers Tom Marsh, Mike Roberts, Philip Hakenjos, Albert Pluskhat Jr., Russ Nelson and Tom Mier, and Health Unit Manager Leonzo Hudson) and one non-MDOC medical professional (Registered Nurse / Physician Assistant[2] Brendon Sherry). Plaintiff alleges that he has a history of high blood-cholesterol levels and loose bowels and has received medications to address those conditions.

Plaintiff's medical records show that on July 20, 2007 he submitted a request for medical care, stating that he still had a kidney infection, and prison medical staff received the request on July 23, 2007. Non-party Nurse Novak examined plaintiff on July 26, and he told her that he had experienced burning and painful urination and increased urinary frequency and urgency for the past week, and that

---

[2]

The U.S. Labor Department explains the training and role of a physician assistant as follows:

Physician assistants ("PAs") practice medicine under the supervision of physicians and surgeons. They should not be confused with Medical assistants, who perform routine clinical and clerical tasks. * * * PAs are formally trained to provide diagnostic, therapeutic, and preventive health care services, as delegated by a physician. Working as members of the health care team, they take medical histories, examine and treat patients, order and interpret laboratory tests and x rays, and make diagnoses. They also treat minor injuries, by suturing, splinting, and casting. PAs record progress notes, instruct and counsel patients, and order or carry out therapy. In 48 States and the District of Columbia, physician assistants may prescribe some medications. In some establishments, a PA is responsible for managerial duties, such as ordering medical supplies or equipment and supervising technicians and assistants.

Physician assistants work under the supervision of a physician. However, PAs may be the principal care providers in rural or inner city clinics where a physician is present for only one or two days each week. In such cases, the PA confers with the supervising physician and other medical professionals as needed and as required by law. PAs also may make house calls or go to hospitals and nursing care facilities to check on patients, after which they report back to the physician.

* * * PAs specializing in surgery provide preoperative and postoperative care and may work as first or second assistants during major surgery.

Http://stats.bls.gov/oco/ocos081.htm, last retrieved July 27, 2009 (website of U.S. Dep't of Labor, Bureau of Labor Statistics, "Occupational Outlook Handbook, 2008-09 Edition").

2

he had "real bad cramps" above the right side of the groin. Defendant PA Sherry examined plaintiff the next day, July 27, and he complained again about urgent and frequent urination. He was prescribed a 30-day supply of Ditropan.[3] Plaintiff alleges that Sherry's examination was inadequate, leading him to suffer until he was rushed to an outside hospital for emergency surgery days later.

On July 30, 2007, a prison nurse examined plaintiff on an emergency basis because he reported that he was nauseous and vomiting and had been ill since "three days ago" after eating tuna fish. Noting that plaintiff had the "potential for fluid and electrolyte imbalance" and dehydration, the nurse discussed her findings with a physician at Duane Waters Hospital and referred plaintiff to Ionia Hospital's emergency room ("ER"), where he was transferred that same day and formally admitted the next day, July 31. Plaintiff was diagnosed with diverticulitis[4], and on August 2, 2007, Ionia Hospital staff performed a laparotomy[5] and a colostomy.[6] Plaintiff was returned to prison, where, so

---

[3]

*See* Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("Bladder Health"), http://www.ortho-mcneilpharmaceutical.com/ortho-mcneilpharmaceutical/bladderhealth/ditropan.html, retrieved July 27, 2009 ("Dixtropan XL is indicated for overactive bladder with symptoms of urge incontinence episodes . . . urgency (a strong need to urinate), and frequency (urinating often).").

[4]

*See Buettner v. HHS*, 686 F. Supp. 616, 617 n.1 (W.D. Mich. 1988) ("Diverticulitis is the inflammation of the diverticulum of the bowel.") (relying on DORLAND'S ILLUS. MEDICAL DICTIONARY); *Richardson v. Astrue*, 2008 WL 3982064, *2 n.6 (E.D. Mo. Aug. 2, 2008) (citing STEDMAN'S MEDICAL DICTIONARY 460 (25th ed. 1990)).

[5]

A laparotomy is "'an incision into the loin.'" *Adams v. Astrue*, 2007 WL 4557803, *6 n.6 (W.D. Ark. Dec. 20, 2007) (quoting PDR MEDICAL DICTIONARY 1048 (3d ed. 2006)). The laparotomy entails "a surgical cut through the wall of the abdomen. Generally, the term implies the purpose of exploring the interior of the abdomen for the aid it may give in . . . a diagnosis'", *Garcia v. Astrue*, 2007 WL 1752090, *3 n.43 (W.D. Tex. June 15, 2007) (quoting Schmidt's ATTORNEY DICTIONARY OF MEDICINE L-693 (Bender 2005 ed.)), such as where the patient suffers unexplained symptoms, *see Cebedo v. Tobal*, 240 F. Supp.2d 373, 375 n.3 (D.V.I. 2003) (citing SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 404 (1987)).

[6]

A colostomy is "the formation of an artificial outlet for the contents of the large intestine

far as the record reflects, he received appropriate medical supplies and medications and had regular contact with medical staff.

Plaintiff also alleges that when his mother called the prison to check on his status, Assistant Regular Supervisor Marsh gave her inaccurate information and Health Unit Manager Hudson told her that he had a bowel blockage and was using a colostomy bag which might or might not be permanent. Plaintiff further alleges that correctional officers Roberts, Hakenjos, Mier, Nelson, and Pluskhat allowed or caused him to suffer needlessly between the July 27 examination and the surgery by failing to check on him or contact medical staff on his behalf. Finally, in January 2008 plaintiff had the colostomy removed at Carson City Hospital.

Plaintiff filed the instant complaint in May 2008, claiming that the defendants violated his Eighth Amendment to be free of cruel and unusual punishment by acting with deliberate indifference to his known serious medical needs. He seeks $10,000 in compensatory damages and $20,000 in punitive damages from each of the seven defendants.

Defendant Sherry, a physician's assistant, filed an answer in September 2008 [doc. #14] and a motion to dismiss in March 2009 [doc. # 27]. Plaintiff filed an opposition brief later in March 2009 [doc. # 28] and Sherry filed a reply brief in April 2009.

The MDOC defendants filed their own motion to dismiss or for summary judgment in November 2008 [doc. nos. 16 and 17] ("MDOC's MTD"). As to plaintiff's claims against the MDOC defendants in their official capacities, the MDOC defendants contend that the Eleventh Amendment bars federal-court suits against state agencies or their employees in their official capacity regardless of the type of relief sought. The MDOC defendants acknowledge three exceptions to Eleventh

---

(colon) through the wall of the abdomen." *Holmes v. Sood*, 2005 WL 3436389, *4 (N.D. Ill. Nov. 9, 2005) (citing Schmidt's ATTORNEY DICTIONARY OF MEDICINE C-361 (Bender 2004 ed.)).

Amendment immunity but contend that none of them applies here: clear, explicit congressional abrogation of the immunity pursuant to its authority under section 5 of the Fourteenth Amendment; the State's own waiver of immunity as to section 1983 or civil-rights actions in federal court[7]; and the issuance of solely injunctive relief in order to govern future conduct and end continuing violations of federal law.[8]

As to plaintiff's claims against these defendants in their *individual* capacities, the MDOC defendants contend that they are entitled to qualified immunity because they had no basis to believe that plaintiff needed additional medical intervention until July 30, 2007. Plaintiff filed an opposition brief in December 2008 [doc. #26], and the MDOC defendants did not file a reply brief.

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Monday, June 22, 2009. The MDOC defendants filed timely objections on Tuesday, July 7, 2009 which are sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which they have objected, *see Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider"). Plaintiff filed a timely response on Friday, July 17, 2009. The MDOC defendants did not file a reply in support of their objections.

---

[7]

As the MDOC defendants note, the State of Michigan has not consented to be sued in federal court for alleged civil-rights violations. *See McGhan v. Kalkaska Cty. Dep't of Human Servs.*, 2009 WL 2170151, *10 (W.D. Mich. July 20, 2009) (Robert Holmes Bell, J.) (citing, *inter alia*, *Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004)).

[8]

Eleventh Amendment immunity also does not apply to political subdivisions of a State, such as counties and municipalities. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (*en banc*).

**The court finds the R&R to be well-reasoned and is unconvinced by the MDOC defendants' objections.** First, plaintiff has not objected to the recommended dismissal of defendant Brendon Sherry. The court agrees with the Magistrate Judge that the complaint essentially states only a belief that Sherry was negligent in his examination of the plaintiff, and a forceful disagreement with Sherry's resulting recommendation and course of action. "[T]he Eighth Amendment is not implicated where prison officials simply acted with negligence." *Hamilton v. Daniels*, 2009 WL 2151334, *3 (W.D. Mich. July 17, 2009) (Quist, J.) (citing *Perez v. Oakland Cty.*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "[D]ifferences in judgment between an inmate and medical personnel regarding the appropriate medical diagnoses and treatment are not enough to state a deliberate indifference claim", *Jamerson v. Caruso*, 2009 WL 2132726, *8 (W.D. Mich. July 13, 2009) (Robert Holmes Bell, J.) (citing, *inter alia*, *Sanderfer*, 62 F.3d at 154-55), "even if the misdiagnosis results in an inadequate course of treatment and considerable suffering." *Jamerson*, 2009 WL 2132726 at *8 (citing *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, *2 (6th Cir. Apr. 4, 2007)). *See, e.g., Heggie v. Kuzma*, 2009 WL 594908, *4 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) (contention that physician assistant should have ordered chest MRI, as he had allegedly promised to the prisoner, instead of X-rays, stated a claim for negligence, not Eighth Amendment deliberate indifference).

Second, plaintiff has not objected to the recommended dismissal of defendants Hudson and Marsh, and the court will dismiss them for the simple reason stated in the R&R at page 5: even if all of plaintiff's allegations are true, he fails to state a claim against them for deliberate indifference, as he alleges only that Hudson and Marsh gave his mother inaccurate or incomplete information regarding his medical condition, treatment, and/or prognosis and suggested that she contact medical

6

staff for further information.

Third, plaintiff has not objected to the recommended dismissal of the official-capacity claims against the remaining five MDOC defendants (Roberts, Hakenjos, Mier, Nelson, and Pluskhat), and the court will dismiss them for the reason stated in the R&R at pages 4-6: plaintiff's complaint seeks only monetary relief, not the types of prospective non-monetary relief (such as injunctive and declaratory relief) which are excepted from Eleventh Amendment sovereign immunity with regard to State employees.[9] *Cf., e.g., Cardinal v. Metrish*, 564 F.3d 794, (6th Cir. 2009) (D.J. Bertlesman, joined by C.J. Boggs) (affirming Quist, J.) (warden entitled to 11th Amendment immunity from RLUIPA because statute did not contain clear indication that receipt of federal prison funds was unambiguously conditioned on a state's consent to suit in federal court for damages); *Barachov v. 41B District Court*, 311 F. App'x 863, 872-73 (6th Cir. 2009) (D.J. David Bunning) (reversing dismissal of claims for prospective injunctive relief against a state judge in her official capacity, noting, "It is settled law that '[a] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Ky. v. Graham*, 473 US.. 159, 167 (1985)) (other cites omitted).

Personal-Capacity Claims Against Defendants Roberts, Hakenjos, Mier, Nelson and Pluskhat. After accurately stating the standard for 8th Amendment deliberate-indifference claims, the Magistrate addressed these defendants' position on the merits of the personal-capacity claims:

> Defendants assert that they are entitled to summary judgment because they did not act

---

[9] By contrast, with regard to claims against the State or a State agency itself (rather than a State employee), there is *no* exception to Eleventh Amendment sovereign immunity for prospective declaratory or injunctive relief. *See S.J. v. Hamilton Cty.*, 374 F.3d 416, 421 (6th Cir. 2004).

> with a sufficiently culpable state of mind. Specifically, Defendants assert that Plaintiff was "under the care of medical professionals when he was ill over a period of several days [in] July of 2007." Defendants further assert that they "were justified in believing that the Plaintiff was in capable hands, until July 30, 2007, when inmate Grover informed Defendant Pluskhat that the Plaintiff appeared extremely ill."
>
> In support of their position, Defendants have identified authority that stands for the proposition that a prison official cannot be found to have acted with deliberate indifference if he fails to act because he believes that the prisoner was receiving adequate care from health care professionals. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) [(Alito, Chertoff, <u>Becker</u>)] ("[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (prison officials entitled to qualified immunity because 'they were entitled to rely upon the medical treatment of CMS nurses once they obtained medical care for [the prisoner]"); *Johnson v. Doughty*, 433 F.3d 1001, 1011-12 (7th Cir. 2006) ("[a] non-medical prison official . . . cannot be held 'deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").
>
> The Court recognizes that a prison official *may* avoid liability under the Eighth Amendment if he, in response to a prisoner's request for medical treatment, relies on the treatment decisions of a medical professional who is treating the prisoner. *The shortcoming in Defendants' argument is that they have failed to present evidence that they acted in reliance on care Plaintiff was allegedly receiving from medical professionals. Simply put, Defendants cannot establish that they acted in reliance on a fact without first establishing their knowledge of that fact.*

R&R at 7-8 (emphasis added). This court agrees that the MDOC defendants cannot win summary judgment where there is at least a genuine issue as to whether they were actually aware of plaintiff's medical treatment and relied on its existence when they allegedly failed to check on him.

Moreover, it does not follow from our Circuit's opinion in *Ash* (or any other binding precedent identified by the defendants) that so long as prison guards know that an inmate is under the care of prison medical professionals, it can *never* be deliberate indifference for them to fail to check on the prisoner or to fail to respond in a timely fashion if that check shows an obvious possibility of a medical problem. Guards and other non-medical prison staff may be *generally* entitled to rely on the

8

supervision and judgment of medical personnel who they know are treating a prisoner. But there are circumstances that may make it deliberately indifferent for them to continue merely incanting, "He's under the care of a doctor or nurse, he *must* be ok."

For example, if the prisoner's skin appears blue or he appears short of breath for no apparent reason, or his appearance otherwise suggests to a layperson that the prisoner may need medical attention, guards cannot simply leave the prisoner to his possible fate on the theory that he has been receiving regular medical care and is "in capable hands." The judgment of the medical personnel necessarily is based on the information available to them when they last saw the prisoner and/or last reviewed his file. It is generally absurd for guards to assume that medical staff are aware of the prisoner's condition *at the current moment*: how would a doctor or nurse who examined a prisoner even an hour ago know that *at this minute*, without his presence, the prisoner appears to be experiencing signs/symptoms of a medical problem?

In addition, the Third Circuit case cited by the MDOC defendants is distinguishable from our case. *Spruill* held that the non-medical prison staff were entitled to summary judgment precisely because, *inter alia*, the prisoner there "did not allege that his condition was so dire and obvious that [corrections officer] Gooler's failure to summon immediate medical attention on May 4 (and to instead let the sick call process run its course) amounted to deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004). Here, by contrast, plaintiff Roberts alleges that his condition was obviously dire, such that the MDOC defendants must have noticed and did notice (during their checking on him during "rounds") that something serious might be amiss which called for prompt communication with medical personnel. (The MDOC defendants do not appear to allege that they did not physically check on Roberts on "rounds" during the relevant period.)

Finally, the Seventh Circuit case cited by the MDOC defendants is factually inapposite as well. Unlike the MDOC defendants here (according to the complaint), the defendant prison grievance-counselor in *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), did not exhibit indifference by failing or refusing to check on the prisoner or to make sure that medical staff was aware of his (allegedly) visibly-serious condition. The counselor in *Johnson* "did not disregard [the prisoner]'s complaints [about his hernia pain]. He investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and [only then] reasonably deferred to the medical professionals' opinions." *Johnson*, 433 F.3d at 1010. The Seventh Circuit took pains to note that "[p]erhaps it would be a different matter if [he] had ignored [the prisoner's] complaints entirely . . . ." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 646 (7th Cir. 2005)). A Northern District of Illinois judge distinguished *Johnson* on a similar basis: "In contrast [to *Johnson*], Plaintiff claims that Smith's signs of illness were so obvious that the defendants must have been aware of them. Accordingly, Plaintiff has established a genuine issue of material fact for trial as to the individual Defendants." *Thomas v. Sheahan*, 499 F. Supp.2d 1062, 1092-93, *resolving motions in limine on other grounds*, 514 F. Supp.2d 1083 (N.D. Ill. 2007).

Somewhat similarly, our plaintiff Roberts alleges that the MDOC defendants acted with deliberate indifference because physical checks on him during their "rounds"[10] in the days immediately preceding his July 30 emergency surgery necessarily would have alerted them – and *did* alert them – to the direness of his condition and his need for urgent additional medical help.[11]

---

[10] Plaintiff Roberts claims that MDOC Policy Directive 03.04.100 required the defendants to physically check prisoners during rounds. *See* Plaintiff's Response to Objections at 1-2. The court intimates no opinion as to whether the Directive he attaches contains such a requirement.

[11] The court does *not* assume that all the MDOC defendants became aware of plaintiff Roberts'

Because of "rounds" if nothing else, the remaining MDOC defendants had numerous opportunities to assess the potential seriousness of plaintiff's condition. If they availed themselves of those opportunities and plaintiff's condition was as obvious as he alleges, one who was *not* deliberately indifferent arguably would have checked with medical personnel to see whether they were aware of the current extent of the condition (his condition, after all, could have deteriorated markedly since he was examined on July 26 and 27).

This approach does *not* require non-medical personnel to second-guess medical personnel's past judgments about a prisoner's condition and needs. Non-medical prison staff are entitled to assume that because the prisoner "is in capable hands", the medical staff's decisions and assessments were correct *at the time they were made*. But this does not mean that a guard can be deliberately indifferent to the possibility that if the medical staff performed an updated evaluation of plaintiff (in response to the guard's contacting them), the medical staff might conclude that the prisoner *now* needs additional or different treatment.

Thus, the record permits a rational factfinder to find that these defendants could have perceived a substantial risk of serious harm to him and acted with deliberate indifference to that risk. As the Sixth Circuit reasoned in a recent deliberate-indifference case,

> Even though prison rules required officers to go up the chain of command if they felt that a referral had not secured the requisite assistance for an inmate, these defendants pin much of their defense on the fact that they (or others) had completed psychological-referral forms. *See, e.g.,* JA 2599 (Lauters: "I knew that healthcare was contacted, I left it at that."). While this fact may be relevant to whether the individual

---

allegedly-obvious medical condition prior to, or independent, their physical check of him during "rounds" on July 28 and 29, 2007 – the days after his examinations by medical staff (July 26 and 27) and before his emergency surgery (July 30). Specifically, the court notes the defendants' allegations that "Defendant Mier was not at work on July 27, 2007 when he was allegedly apprised on Plaintiff's condition by Defendant [sic] Montague" and "inmate Grover did not have access to Defendant Nelson when Grover allegedly told Nelson of Plaintiff's need for health care." MDOC Obj. at 2.

11

defendants recklessly disregarded a risk of harm to Clark or responded reasonably to it, the fact does not suffice to establish that the defendants are entitled to qualified immunity as a matter of law at this stage of the case *given their repeated* interactions with Clark and *repeated opportunities to assess the seriousness of the situation.*

None of this, to be sure, establishes that these defendants either singly or as a group showed deliberate indifference to Clark. For summary-judgment purposes, we hold only that (11) eleven defendants could have perceived a substantial risk of serious harm to Clark. Whether in fact they perceived, inferred or disregarded that risk is an issue for trial. *See Farmer*, 511 U.S. at 842 . . . (". . . a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") . . . .

*Clark-Murphy v. Foreback*, 439 F.3d 280, 290-91 (6th Cir. 2006) (Sutton, J., joined by D.J. Bunning) (emphasis added).

For these reasons and those stated in the R&R at 8-11, the MDOC defendants are not entitled to qualified immunity on the personal-capacity claims, nor have they shown their entitlement to summary judgment on the merits of those claims.

**ORDER**

Accordingly, having reviewed the complaint; the briefs regarding the motion to dismiss of defendants Hudson, Marsh, Hakenjos, Mier, Nelson, and Pluskhat; the briefs regarding defendant Sherry's motion to dismiss; the R&R, the objections of defendants Hakenjos *et al.* to the R&R, and the plaintiff's response to those objections:

The objections of Hakenjos, Mier, Nelson, Pluskhat, & Roberts **[#34] are OVERRULED**.

The Report & Recommendation **[doc. # 30] is ADOPTED**.

Defendant Sherry's motion to dismiss **[doc. # 27] is GRANTED**.

Pursuant to FED. R. CIV. P. 12(b)(6), the claims against defendant Sherry are **DISMISSED**.

The motion to dismiss and/or for summary judgment filed by defendants Hudson, Marsh,

Hakenjos, Mier, Nelson, Pluskhat, and Roberts **[doc. # 16] is GRANTED in part** as follows:

All claims against defendants Hudson and Marsh are **DISMISSED**.

Official-capacity claims against Hakenjos, Mier, Nelson, Pluskhat & Roberts are **DISMISSED**.

The motion to dismiss and/or for summary judgment filed by defendants Hudson, Marsh, Hakenjos, Mier, Nelson, Pluskhat, and Roberts **[doc. # 16] is DENIED in part** as follows:

The personal-capacity claims against Hakenjos, Mier, Nelson, Pluskhat & Roberts survive.

This is not a final order. *See Lakeland Reg. Health Sys. v. Walgreen's Health Initiatives, Inc.*, 604 F. Supp.2d 983, 1003 (W.D. Mich. 2008) (Maloney, C.J.) ("Absent certification of an interlocutory appeal under 28 U.S.C. § 1292(b) or FED. R. CIV. P. 54(b), an order disposing of fewer than all parties or claims is nonappealable.") (quoting *Bd. of Ed. of Avon Lake City Sch. Dist. v. Patrick M.*, 215 F.3d 1325, 2000 WL 712500, *4 n.5 (6th Cir. May 24, 2000) (citing *Wm. B. Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978))).

**IT IS SO ORDERED this 29th day of July 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge